**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:15-23010-CIV-GOODMAN**
**[CONSENT CASE]**

KEISHA LATORYA SMITH,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Keisha Latorya Smith ("Smith") and Defendant Acting Commissioner of

the Social Security Administration Carolyn W. Colvin ("Commissioner") filed cross-

motions for summary judgment. [ECF Nos. 17; 18]. An Administrative Law Judge

("ALJ") determined that Smith was not disabled, and Smith seeks judicial review of her

decision. [ECF No. 17, p. 3]; (R. 27).[1] Smith argues that substantial evidence does not

support the ALJ's decision. Specifically, Smith argues that the ALJ committed reversible

errors (1) by finding that Smith's anxiety and depression were not severe impairments,

_____

[1]    References to "(R.__)" are to the page of the transcript of the administrative
order.

and (2) by failing to give the opinions of the treating and examining psychiatrist, Dr. Poitier, controlling evidentiary weight. [ECF No. 17, p. 2].

For the reasons outlined below, the Undersigned **grants** Smith's summary judgment motion [ECF No. 17], **denies** the Commissioner's summary judgment motion [ECF No. 18], and **remands** the Commissioner's decision for further proceedings consistent with this Order.

## 1. BACKGROUND

### A. Procedural History

On November 23, 2011, Smith filed a Title II application for a period of disability and disability insurance benefits. (R. 195). The alleged onset date was October 19, 2009. (R. 83). On January 23, 2012, the Social Security Administration found that Smith was not disabled. (R. 103-08). Smith submitted a request for reconsideration for social security benefits on January 24, 2012, but the Social Security Administration found that its initial decision was correct. (R. 109, 111).

Smith requested and appeared at a hearing before the ALJ on October 2, 2013. (R. 33). On January 22, 2014, the ALJ issued her initial decision, finding that Smith had the residual functional capacity ("RFC")[2] to perform jobs in the national economy, and that she had not been under a disability, as defined by the Social Security Act, from October

---

[2]   The Residual Functional Capacity is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

19, 2009 through January 22, 2014. (R. 27). Smith submitted a request for the Appeals Council to review the ALJ's unfavorable decision, but it denied her request on June 11, 2015. (R. 1).

Thereafter, Smith filed this Action. [ECF No. 1].  On February 2, 2016, Smith filed her summary judgment motion. [ECF No. 17]. On March 14, 2016, the Commissioner filed a competing summary judgment motion and a response to Smith's motion. [ECF Nos. 18; 19].[3]  The Undersigned required Smith to file a response to the Commissioner's motion. Smith failed to file such response. [ECF No. 11]. The matter is now ripe for review.

### B. Facts

#### 1. *Smith's Relevant Testimony*

Smith was born on July 31, 1975 and was 34 years old on the disability onset date. (R. 17, 26). Smith previously worked as a bus driver and sales attendant. (R. 25). She has not worked since the onset of her injury, with the exception of "sporadic babysitting." (R. 36-37). To facilitate a worker's compensation claim, Smith has had to continue to search for work or her medical treatments would stop. (R. 49).

Smith claimed she was fired from her bus driver job on October 19, 2009 due to excessive work days missed, which she claimed was because of her injury. (R. 39).  She testified that she can drive and that she takes her 8 year-old son to and from school,

---

[3]      The Undersigned notes that ECF No. 19 is a duplicate of ECF No. 18.

which is three miles from her home. (R. 39, 41). She goes to church every so often but does not attend social functions. (R. 43).  Her friends and family come over to her house to assist her with grocery shopping, cleaning, and chores. (R. 43).

She reported that she takes hydrocodone three times a day for pain, as well as Cymbalta and Trazadone. (R. 41-42). Side effects from the medications include pain in her eyes and nausea. (R. 42).

She testified that since her injury, "my left arm, has been giving me a lot of problems. I can't hold nothing in it; if so it'll drop or fall or whatever." (R. 44).  She also complained of constant headaches, backaches, neck, and shoulder problems that keep her up at night. (*Id.*, R. 48-49).

Smith is able to stand or sit for about 10 minutes and walk with difficulty around the block. (R. 46-48). She testified that she can carry 5 pounds with her left arm but not lift it due to pain in her neck, arm, and shoulder. (R. 48).

At the hearing, she also testified that she saw her treating psychiatrist, Joseph Poitier, M.D., every two months for counseling and medication for her anxiety and depression. When asked if the medication seemed to help with the depression, Ms. Smith responded, "I guess, somewhat, yes." (R. 42).

### 2. *Vocational Expert's Testimony*

The ALJ's medical and vocational expert, Peter Schosheim, M.D. (the "VE"), although not a mental health specialist, but rather an orthopedic surgeon, testified that

Dr. Poitier's medical reports were unremarkable, that Plaintiff's treatment helped, and her mental condition was stable. (R. 66-67). The VE also did not note any work-related mental limitations. (R. 67-68). Nonetheless, he testified that Smith "has had an ongoing depression that may have been secondary to her medical issues. That being said, she's followed closely by her psychiatrist." (R. 66).

### 3. *Relevant Medical Evidence*

The record before the ALJ includes Smith's medical records, all of which the Court has carefully reviewed.  I address the medical record evidence as relevant to the issues discussed below.

### 4.    *The ALJ's Findings*

Using the Commissioner's five-step sequential evaluation process in her written decision (R. 15-17), which is described below, the ALJ concluded that Smith is not disabled. (R. 27). She found at step one that Smith has not engaged in substantial gainful activity since the onset of her injury. (R. 17). At step two, the ALJ found that Smith has severe impairments of the disorder of the back, status post cervical surgery, cervical laminectomy, and obesity, but she concluded that Smith's mental impairments are non-severe. (*Id.*). At step three, the ALJ found that Smith does not have an impairment or combination of impairments that meets or equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 19).

The ALJ then found that Smith has the RFC to "perform light work with the ability to occasionally lift, carry, push, and pull up to twenty pounds or ten pounds frequently; stand or walk up to two hours in an eight-hour day or sit up to six hours . . . occasionally use the left hand for fine and gross manipulation, with no limitations on the use of the dominant right hand" and she needed "a sit/stand option."(R. 19).

Applying the RFC at step four, the ALJ found that Smith cannot perform her past relevant work as a bus driver. (R. 25). In the fifth step, the ALJ found that Smith can perform other work as identified by the VE, such as a parking lot attendant, rental clerk, or ticket seller. (R. 26-27, 70-73).

## 2.    APPLICABLE LEGAL PRINCIPLES

### A.  <u>Standard of Review</u>

In evaluating a claim for disability benefits, the ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520:

> 1.    Is the claimant performing substantial gainful activity? If not, then the ALJ next determines;

> 2.    Does the claimant have one or more severe impairments?  If the claimant does, then the ALJ next considers;

> 3.    Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled; if not, then the ALJ must determine claimant's RFC; and then determine;

> 4.    Based on the RFC, can claimant perform her past relevant work?  If so, then she is not disabled.  If she cannot perform her past relevant work, then the ALJ must finally determine;

> 5.      Based on her age, education, and work experience, and the RFC, can claimant perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

In reviewing the ALJ's decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard, and whether her findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984).  "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240, n. 8 (internal citation omitted). The substantial evidence standard does not permit a reviewing court to consider only those parts of the record that support the ALJ; the court must view the entire record and also consider evidence which detracts from the evidence relied on by the ALJ. *Mackie v. Astrue*, No. 1:07-cv-00098-MP-WCS, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008).

While the Court applies a presumption in favor of the ALJ's finding of fact, no such presumption applies to the ALJ's legal conclusions. Thus, the Court must reverse if the ALJ incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, at * 5 (M.D. Fla. Jan. 22, 2008). The ALJ's failure to specify the weight given to evidence contrary to her

decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, at * 5 (M.D. Fla. Sept. 19, 2011). The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, at * 5; 42 U.S.C. § 405(g).

Some of the ALJ's findings are not in dispute. There is no dispute that Smith has not engaged in substantial gainful employment since October 19, 2009 or that Smith cannot perform her past relevant work.  Moreover, Smith does not challenge the ALJ's finding that her impairments or combination of impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Smith does, however, challenge the ALJ's determination, at step two, that her anxiety and depression are non-severe; she also challenges the ALJ's failure to give controlling weight to the opinions of her treating psychiatrist in crafting the RFC.  [ECF No. 17, pp. 15-19]. Smith asserts that these errors resulted in a determination of non-disability that is not supported by substantial evidence.

Because I find that the ALJ's determination that Smith's mental impairments are non-severe is not supported by substantial evidence and that the ALJ failed, without an adequate explanation, to apply substantial weight to the opinions and reports of Smith's treating physicians, I am remanding this case for further consideration.

3.    **ANALYSIS**

A. <u>**The ALJ's Finding that Smith's Mental Impairments Are Non-Severe at Step Two Is Not Supported by the Record**</u>

Smith first contends that the ALJ committed reversible error by failing to classify her anxiety and depression (or her "Adjustment Disorder") as severe impairments at step two of the sequential evaluation. [ECF No. 17, pp. 6-7].

A severe impairment significantly limits a claimant's physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521(a); Social Security Ruling ("SSR") 96-3p; *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987).

To be considered a severe impairment at step two of the sequential evaluation process, the impairment must be severe for at least twelve consecutive months. *See* 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii); SSR 96-3p; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). The claimant bears the burden of proving that the impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

In the Eleventh Circuit, the severity step is a threshold inquiry which allows only claims based on the most trivial impairments to be rejected. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (finding that this step is to weed out claims where there are no substantial impairments at all); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (describing the claimant's burden to show a severe impairment as "mild").

In evaluating Smith's mental condition, the ALJ analyzed her degree of limitation in the four broad functional areas of the paragraph B criteria used in evaluating mental

disorders under the Listing of Impairments ("'paragraph B' criteria") (R. 17-18). The functional categories are the following: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence or pace; and (iv) decompensation. (*Id*.).

      i.    *Dr. Poitier's Functional Report*

Dr. Poitier provided his opinions about the severity of Smith's mental impairments in a Mental Impairment Questionnaire (RFC & Listings) on October 1, 2012 (R. 763-68). Dr. Poitier noted that he had been treating Smith since January of 2011 (R. 647, 763) and diagnosed Smith with Major Depressive Disorder. (R. 763). He assigned her a Global Assessment Functioning ("GAF") score of 50.[4] (*Id*.).

Dr. Poitier identified Smith's symptoms: Anhedonia or pervasive loss of interest in almost all activities; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; catatonic or other grossly disorganized behavior; flight of ideas; deeply ingrained, maladaptive patterns of behavior; unrealistic interpretation of physical signs or sensations associated with the

---

[4]    A GAF score of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job, cannot work). *Global Assessment of Functioning*, WIKIPEDIA, http://en.wikipedia.org/wiki/ Global_Assessment_of_Functioning (last visited Sept. 26, 2016).

preoccupation or belief that one has a serious disease or injury; loosening of associations; illogical thinking; and easy distractibility. (R. 764).

Based on these symptoms, Dr. Poitier opined that Smith could not perform independent activities effectively and "on a sustained basis in a regular work setting." (R. 765-66). He also noted that Smith had extreme functional limitations of activities of daily living, in her maintenance of social functioning, and in her concentration, persistence and pace (R. 767). He expected that Smith would likely be absent from work "[m]ore than four days per month" due to her impairments or treatment. (R. 768).

ii.     *The ALJ's Finding of Non-Severity at Step Two as to Smith's Mental Impairments Is Conclusory and Not Supported by the Record*

In discussing the paragraph B criteria, the ALJ determined that Smith has no limitation in activities of daily living or social functioning; only mild limitation in concentration, persistence, or pace; and no extended-duration episodes of decompensation. (R. 18). The ALJ determined that Smith's mental impairments are non-severe. *(Id.).*

The ALJ rendered her decision as to the paragraph B criteria without a citation to any specific medical evidence. The Undersigned finds that the ALJ's conclusory finding of non-severity is not supported by the record. Labeling Smith's mental impairments as non-severe without analysis renders the ALJ's decision problematic, especially in light of Dr. Poitier's directly relevant functional report indicating otherwise.

To reach this decision, at this stage, the ALJ did not discuss the weight she gave to Dr. Poitier's report because she did not discuss the report (or any other report or opinion). But the record is replete with references from other treating physicians about Smith's persistent anxiety and depression and their apparent negative effect on her daily living and ability to work.[5] (R. 427, 531, 533, 535-39, 540-41, 760, 768, 789-91, 808, 811, 814, 818).  The ALJ did not address this evidence either. *Hart*, 2011 WL 4356149, at *5 (finding that the ALJ's failure to specify the weight given to the evidence contrary to her decision, or to give the reason for discrediting evidence, is reversible error).

As a result, the Undersigned finds that the ALJ's superficial labeling of Smith's mental impairments is not supported by the record because, for such a threshold determination, only the most trivial impairments are considered non-severe. *Gray*, 550 F. App'x at 853. On remand, the ALJ should consider the entire medical record, and make specific findings as to why she agrees or disagrees with Dr. Poitier's findings about the severity of Smith's mental impairment at step two.

    iii.    *The Undersigned Need Not Decide Whether the ALJ's Determination that Smith's Mental Impairments Are Non-Severe at Step Two Is Harmless Error*

Smith claims that the ALJ's classification of Smith's mental impairments as non-severe at step two is not harmless error because the ALJ did not account for Smith's

---

[5]    Although Smith's motion mainly addresses the ALJ's failure to consider the report and opinion of Dr. Poitier, the record also reflects that Dr. Traina, Dr. Berkower, and Dr. Williams also treated Smith and drafted functional reports regarding Smith's injuries, their treatment of those injuries and their opinions about disability.

mental impairments when she determined her RFC. [ECF No. 17, p. 15]. Smith argues that the ALJ's determination at step two is erroneous and adversely affected her analysis in the remaining steps of the sequential evaluation.

The Undersigned is concerned that the ALJ first stated in step two that any "determination" made by another agency in relation to Smith's worker's compensation claim was non-binding on her decision (before the Social Security Administration) and that this was the ALJ's only rationale for not considering with great weight Smith's treating physicians' opinions and reports both at step two and for the remainder of her report. (R. 19). As outlined in greater detail below, there is no "determination" or "decision" or "finding" by another agency in this case. There are only reports and opinions of treating physicians rendered in connection with a worker's compensation claim. However, the Undersigned's concern over the ALJ's failure to afford great weight to this substantial record evidence from treating physicians does not require me to determine if this scenario constitutes harmless error at step two because, as explained below, the Undersigned remands this case on *other* grounds. But this Order will still provide an analysis of why the ALJ's step two conclusion is problematic.

An error is harmless and does not warrant reversal when the correct action would not contradict the ALJ's ultimate findings. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008); *see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Stated

another way, an ALJ's "error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).

When an error at step two is made, courts have determined that the error may constitute harmless error. But there is "no bright line rule that **all** errors at step 2 are harmless when the ALJ moves beyond step 2." *Newton v. Astrue,* No. 1:06-CV-1542, 2008 WL 915923, at *10 (N.D. Ga. April 1, 2008) (emphasis supplied). Indeed, as noted in *Newton*, "[c]ourts have specifically determined that an error at step two does not necessarily constitute harmless error" and courts "examine whether the error at step 2 infected another portion of the evaluation process." *Id.* (internal citations omitted). In fact, the *Newton* Court held that a failure to examine and consider certain pain and symptoms at step two was not harmless error even though the ALJ moved past step two after finding that the plaintiff had three severe impairments. *Id.*; *see also Wilson-Gantt v. Comm'r of Soc. Sec.*, No. 6:15-cv-257, 2016 WL 4702420, at *7 (M.D. Fla. Sept. 8, 2016) (holding that error at step two was not harmless because "[a]fter erroneously determining that Claimant's mental impairments were non-severe at step-two, the ALJ 's [sic] never mentions them again"); *Fellows v. Astrue,* No. 1:10CV701, 2011 WL 4005239, at *3 (M.D. Ala. Sept. 8, 2011) (finding that error at step two was not harmless because the ALJ did not include any mental limitations whatsoever in her RFC finding and the error therefore "deprives the ALJ's step five finding of the support of substantial evidence") (internal citations omitted).

At step two, the ALJ did find that Smith had *other* severe impairments, including the disorder of the back, status post cervical surgery, and cervical laminectomy. (R. 17). Because the ALJ found that Smith has several severe impairments, the ALJ's analysis proceeded to step three of the sequential evaluation, which *usually* absolves any issue of error at step two (R. 17-18) because the ALJ must consider "the claimant's medical condition as a **whole**, which includes **both** severe and non-severe impairments" for the remainder of sequential evaluation. *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (emphasis added).

However, at step three, the ALJ's analysis failed to include **<u>any</u>** specific findings about Smith's mental impairments under 20 CFR 404, Subpart P, Appendix 1. (R. 17-18). To be sure, at step four, the ALJ did in fact cite to the medical opinions of treating physicians, including Dr. Poitier, who opined on Smith's symptoms related to depression and anxiety. (R. 19-25). However, the ALJ did not make any specific determinations about why the doctors' opinions about Smith's symptoms and inability to function in a regular work setting were insufficient. The mere recitation of a medical opinion, without sufficient analysis, is not an appropriate evaluation for determining a RFC or making a finding as to disability. Thus, the ALJ's error at step two is most likely not harmless error, but the Undersigned need not conclusively rule on this point because the ALJ's other mistake -- not giving great weight to Smith's treating

physicians' opinions and functional reports or not adequately providing a good cause ground for this approach -- is sufficient to warrant a remand.

**B.   The ALJ Reversibly Erred by Failing to Give Great Weight to the Treating Physicians' Opinions and Reports**

Smith next contends that the ALJ committed reversible error by failing to give controlling weight to the opinion of Smith's treating psychiatrist, Dr. Poitier, in her finding that Smith has the RFC to perform light work (and that Smith is not disabled). [ECF No. 17, pp. 15-16].

The Undersigned agrees that the ALJ committed reversible error by not giving the treating physicians' reports and opinions great weight. Although the ALJ explained that she gave the treating physicians reports and opinions "*appropriate* weight," (emphasis added), this non-descript explanation is too general to provide any real insight into what weight was afforded to the treating physicians' reports and opinions. The only reason the ALJ gave for this reduced consideration of "appropriate" weight (i.e., a weight other than "great"), is that the reports and opinions were rendered in connection with Smith's worker's compensation claim.[6] (R. 25). As explained below, the ALJ's review of the medical record and her explanation about what weight she afforded the opinions and reports of treating physicians are inadequate.

---

[6]      The Undersigned notes that Smith claims that the functional report of Dr. Poitier was drafted in connection with Smith's Social Security disability claim rather than her worker's compensation claim. [ECF No. 17, p. 19].

i.     *The ALJ's Report Does Not Set Out Good Cause*

An ALJ's "[f]ailure to explain the weight given to different medical opinions is reversible error." *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 876 (11th Cir. 2006) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The ALJ must specifically state "the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Treating physicians' testimony "must be given substantial weight unless 'good cause' is shown to the contrary." *Lewis*, 125 F.3d at 1440. The Eleventh Circuit has determined that "good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 124 (internal quotations and citations omitted).

The ALJ must clearly articulate his reasoning for disregarding a treating physician's opinion. *Id.* "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

17

Here, the ALJ did not provide great weight to the treating physicians' medical opinions and reports because she noted that they "reflect the rules, regulations and requirements of the State of Florida and not the Social Security Administration." (R. 25). The ALJ reached this conclusion by analogizing the treating physicians' opinions and reports with the **decisions** or **findings** of non-governmental agencies.

Specifically, the report states that "to the extent there is evidence of a claim for state workers compensation benefits . . . a **decision** by any nongovernmental agency or any other governmental agency about whether a claimant is disabled or blind is based on its rules and is not our decision . . . and [such determination] is not binding on this evaluation." (R. 19) (emphasis added). As a result, the ALJ found that although the functional reports of Dr. Traina, Dr. Berkower, Dr. Williams, and Dr. Poitier, Smith's treating physicians, "merit consideration" and "appropriate weight," they are not "controlling under these circumstances and in light of the evidence and testimony as a whole." (R. 25).

As treating physicians, these four doctors generated opinions and reports which are entitled to controlling weight absent good cause. The ALJ's imprecise reason for not affording the presumptively appropriate weight does not amount to good cause. The ALJ did not appropriately state the weight accorded to each medical opinion. Saying that "appropriate" weight was given does not adequately explain what weight was

18

given. What is "adequate" weight? Is it great weight? Is it substantial weight? Is it modest weight? Is it minimal weight? I cannot tell.

Moreover, the ALJ then explained that the functional opinions of the VE, who is not a treating doctor here, would be "afforded greater weight given their overall consistency with the treating records," but did not explain *how* they were consistent. The ALJ's vague summary of her decision on the weight to afford the four treating doctors and the VE lacks sufficient details for the Undersigned to appropriately evaluate the ALJ's decision.

In reviewing the ALJ's report, the Undersigned is tasked with the assignment of finding substantial evidence in the record to support the ALJ's findings that good cause exists to provide less weight to the treating physicians' reports and opinions than that of the VE's opinion, despite the ALJ's non-articulated findings and analysis about this evaluation. But the ALJ made no express, specific findings (1) that the treating physicians' opinions and reports were not bolstered by the evidence; (2) that the evidence supported a contrary finding; or (3) that they were conclusory or inconsistent with each doctor's own medical records.

Without sufficient explanation, the ALJ gave the opinions of the VE -- an orthopedic surgeon who has no expertise in mental health and is not Smith's treating physician -- greater weight than the other physicians "given their overall, consistency with the treating records." (R. 25). The ALJ reasoned that the VE's opinion should have

greater weight because of his familiarity with the Social Security regulations, in contrast to the other doctors' opinions and reports, which were made in furtherance of a worker's compensation claim. No further rationale for this conclusion was provided.

The ALJ concluded that the VE's opinion is consistent with the treating physicians' opinions and reports, but she also concluded that the VE's opinion contradicts the other doctors' findings and, thus, compels greater consideration. Yet the ALJ failed to adequately compare or contrast the VE's opinion to the other opinions and reports on the record. As a result, the Undersigned finds that the ALJ has not established good cause to consider the VE's opinion with more weight than the opinions and reports from the treating physicians.

    ii.   *The ALJ Erred in Not Applying Great Weight to the Treating Physicians' Reports and Opinions Rendered in Connection with Smith's Worker's Compensation Claim*

As previously mentioned, the ALJ emphasized that the determinations and findings of other agencies about disability are non-binding on her determination of Smith's disability claim. In fact, she mentioned this point several times in her ruling. But findings and decisions **of other agencies** are not at issue here. Instead, what is at issue here is whether the ALJ properly considered the opinions and reports of Smith's treating physicians when such opinions and reports were rendered in connection with Smith's worker's compensation claim.

As a result, the Undersigned must determine how treating physicians' opinions and reports rendered in connection with worker's compensation claims are weighed in social security cases to determine whether the ALJ's decision to apply "appropriate weight" -- a standard different than great weight -- was in error.[7] Smith and the government did not brief this pivotal issue. As it turns out, other jurisdictions are **divided** on this issue.

For instance, in the Third and Ninth Circuits, it has been held that "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart,* 181 F. Supp. 2d. 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler,* 750 F.2d 245, 247–248 (3d. Cir. 1984) (holding that the ALJ failed to weigh all the record evidence because the ALJ failed to consider medical reports submitted in the state workers' compensation proceeding)); *see also Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995) (holding that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). In the circuits following this rule, the ALJ must evaluate medical opinions couched in state worker's

---

[7]    The ALJ's explanation of the Eleventh Circuit law on this point is incomplete. Although the ALJ correctly noted that a "decision" by another agency about disability is "not binding," she failed to include the rest of the directly related law on this point -- that disability findings of other agencies are "generally entitled to 'great weight.'" *Werner v. Comm'r of Soc. Sec.,* 421 F. App'x 935, 939-40 (11th Cir. 2011) (quoting *Bloodsworth v. Heckler,* 703 F.2d 1233, 1241 (11th Cir. 1983)).

compensation terminology just as he or she would evaluate any other medical opinion. *See Coria,* 750 F.2d at 247–248.

But in the Tenth Circuit and other federal district courts, medical opinions and reports elicited in worker's compensation cases follow different standards and need not be considered in social security determinations. *See, e.g., Freeman v. Astrue,* 441 F. App'x 571, 573-74 (10th Cir. 2011) (holding that the ALJ was not required to give the opinions of doctors that were retained for worker's compensation purposes deference);[8] *Schunk v. Colvin,* No. 11-CV-0670T, 2015 WL 471273, at *7 (W.D.N.Y. Feb. 4, 2015) (holding that the opinions of treating physicians, where such opinions were rendered in connection to a worker's compensation claim, "invoke[] a different standard of disability than the standard under the Act for social security purposes" and the "ALJ therefore did not err in affording those opinions 'little' weight.") (internal citations omitted); *Rose v. Chater*, No. CIV. A. 94-4421, 1995 WL 365404, at *6 (E.D. Pa. June 15, 1995) ("an ALJ making a

---

[8]     The Tenth Circuit does not consider a physician who saw a patient in connection with a worker's compensation claim to be a "treating physician" when the physician saw the patient on only a few occasions and did not provide treatment over an extended period. *McTaggart v. Astrue,* 342 F. App'x 373, 375 (10th Cir. 2009); *see also Freeman,* 441 F. App'x at 574 (finding that visits to doctors contacted as part of worker's compensation claim were "of short duration" and infrequent); *Renfro v. Astrue,* No. CIV-11-223, 2012 WL 488832, at *6 (W.D. Okla. Jan. 17, 2012) (finding that the treating physician rule was inapplicable because the doctor conducted only a "one-time examination" for a worker's compensation rating). This distinction is inapplicable here, where neither the ALJ nor the Commissioner challenged the treating physician status for the doctors discussed here.

Social Security determination may ignore or disregard a physician's *conclusions* as to a claimant's disability made in the context of a workers' compensation determination.").

The Eleventh Circuit has not directly addressed the specific weight the ALJ must give to the opinions and reports of treating physicians elicited in worker's compensation claims. However, the Eleventh Circuit has held that the ALJ is required to give "great weight" to the disability **findings** of a state agency, even though they are not binding, and failure to do so is error. *Werner*, 421 F. App'x  at 939-40 (holding that disability determinations by other agencies are generally entitled to great weight but are not binding on the Commissioner); *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (holding that it was error for the ALJ to not give great weight to the Florida agency's finding of temporary total disability and on remand the ALJ would be required to accord the worker's compensation finding its proper weight); *Bloodsworth*, 703 F.2d at 1241 (finding that agency determinations are entitled to "great weight"); *Cary v. Colvin*, No. 8:13-CV-2089-T-17DAB, 2014 WL 2961128, *13 (M.D. Fla. July 1, 2014) (remanding case to the ALJ to explain why great weight was not given to the worker's compensation disability determination).

Based on the Eleventh Circuit's rulings in *Werner, Falcon*, and *Bloodsworth*, where worker's compensation *determinations* and *findings* are given great weight in social security cases, the Undersigned adopts the Ninth and Third Circuit positions and extends *Werner, Falcon*, and *Bloodsworth* to the **opinions** and **reports** of treating

physicians. As result, in the absence of good cause, the "great weight" applied to the VE and the "appropriate weight" applied to the treating physicians were in error. Therefore, the Undersigned finds that the ALJ committed reversible error by failing to appropriately apply great weight to the treating physicians' opinions and reports (or failing to adequately explain the good cause grounds to not afford great weight to their opinions and reports).

On remand, even though Smith's treating physicians' opinions and reports may have been originally provided in connection with her worker's compensation claim, may refer to different terminology, and are not binding, the ALJ must give their opinions and reports about disability great weight or sufficiently explain the good cause grounds to not do so.

The ALJ should determine the severity of Smith's mental impairments, applying the proper standard. The ALJ should then consider the full medical record, as properly weighed, as well as other evidence in the record, to determine a revised RFC.  Applying the revised RFC, if necessary, the ALJ should proceed to step five of the required analysis to make a final determination of Smith's eligibility for disability benefits.

## 4.    CONCLUSION

For the reasons stated above, the Undersigned **grants** Smith's summary judgment motion [ECF No. 17], **denies** the Commissioner's summary judgment motion [ECF No. 18], and **remands** the Commissioner's decision for further proceedings

consistent with this Order. In addition, the Court instructs the Clerk to **close out** this case and deny all other pending motions as moot.

        **DONE AND ORDERED**, in Chambers, in Miami, Florida, on this 26th day of September, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies Furnished to:**
All counsel of record